UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURA JEAN EHMER,

    Plaintiff,

v.                                      Case No:   6:18-cv-100-Orl-22TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Laura Jean Ehmer appeals to this Court from Defendant the Commissioner of Social Security's final decision to deny her applications for disability insurance benefits and supplemental security income. I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, hearing transcript, and the joint memorandum submitted by the parties. For the following reasons, I respectfully recommend that the Commissioner's final decision be **reversed** and the case **remanded**.

### Background[1]

Plaintiff was fifty-three years old when the ALJ handed down his decision (Tr. 288). She has a high school education and training as a certified nursing assistant (Tr. 338). She submitted her applications for disability insurance benefits and supplemental security income on July 9, 2013 and October 22, 2013, respectively, alleging an onset date of June 8, 2013 (Tr. 106, 120, 288-300). Her claims were denied initially and on

---

[1] The information in this section comes from the parties' joint memorandum filed on August 15, 2018 (Doc. 18).

reconsideration (Tr. 156-158, 160-162, 170-174, 176-180). At Plaintiff's request, the ALJ held a hearing on April 22, 2016 and a supplemental hearing on August 31, 2016 (Tr. 43-60, 68-87, 181-182). The ALJ issued his unfavorable decision on January 4, 2017 (Tr. 11-35). Plaintiff asked the Appeals Council to review the ALJ's decision and on December 1, 2017, it denied her request (Tr. 1-6). The ALJ's decision became the Commissioner's final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted her administrative remedies and her case is ripe for review.

## The ALJ's Decision

When determining whether an individual is disabled the ALJ must follow the Commissioner's five-step sequential evaluation process published in 20 C.F.R. § 416.920(a)(4). The ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her June 8, 2013 alleged onset date (Tr. 16). At step two, the ALJ found Plaintiff severely impaired by bipolar disorder, anxiety disorder, post-traumatic stress disorder, histrionic personality disorder, rule out cognitive disorder, chronic obstructive pulmonary disease, and coronary artery disease status post myocardial infarction and stent placement (Tr. 16-17). At step three, the ALJ concluded that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 17-18). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to,

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant should have no more than occasional contact with the public, coworkers, and supervisors. There should be no complex instructions. The claimant is limited to simple, routine, and repetitive tasks. There should be no more than occasional changes in the work setting. The claimant should have no exposure to chemicals, fumes, or temperature extremes.

(Tr. 19-26). At step four, the ALJ found Plaintiff unable to perform her past relevant work (Tr. 26-27). But, the ALJ ultimately concluded at step five that there are jobs in the national economy–like small parts assembler, inspector and hand packager, and plastic hospital products assembler–that Plaintiff can perform and therefore, she is not disabled (Tr. 27-28).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff complains that the ALJ's RFC finding is not supported by substantial evidence (Doc. 18 at 11-13). The RFC is an assessment of the most a claimant can still do despite her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945; Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Lacina v. Comm'r Soc. Sec., 606 F. App'x 520, 526 (11th Cir. 2015). The ALJ has a duty to "state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 1987). The ALJ must then incorporate all substantiated medical opinions and limitations into the RFC. In other words, the RFC must be based on substantial evidence and include all limitations verified by the record evidence. Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing Lewis, 125 F.3d at 1440).

At the supplemental hearing in August, 2016, Dr. Olin M. Hamrick, Jr., Ph.D., testified as an independent medical expert (Tr. 45-52). He provided the following observations and functional assessment:

> Q. What about the functionality? What would be the mental limitations in this case?
>
> A. In terms of occupational settings, I think that it would make sense to conclude that there would be a limitation to simple one and two step operation in a working setting that involved no more than occasional contact with the public, coworkers, and supervisors.
>
> And where there is a limit on the level of stress to **no fast paced, time limited production, high production demand type work**. And I think she would work better with things rather than with people. I think that limitation of the requirement to deal with stressors and changes would also be limited to no more than occasional.

(Tr. 47-48) (emphasis added). The ALJ assigned "significant weight" to Dr. Hamrick's opinion because "he performed a comprehensive review of all of the medical evidence" and because his medical opinions are consistent with the record evidence, namely the consultative examination findings and the Stewart Marchman Act Behavioral Health treatment records[2] (Tr. 26). Despite reaching this conclusion, the ALJ inexplicably failed

---

[2] In his discussion of Dr. Hamrick the ALJ wrote:

> In the August 2016 supplemental hearing, an independent medical expert and psychologist, Olin Hamrick, Jr. Ph.D., testified that the claimant's diagnoses include bipolar disorder, anxiety disorder (generalized anxiety disorder and PTSD), histrionic personality disorder, and a history of substance abuse. Dr. Hamrick testified that there is a possibility of a cognitive disorder, although it is not well documented in the record. Dr. Hamrick testified that there is not enough evidence to indicate that the claimant's impairments meet a listing. Dr. Olin testified that there is evidence of moderate limitation in the B criteria. Dr. Olin opined that the claimant had moderate limitation in activities of living. As to social functioning, he indicated that there is evidence of family conflict, but nothing to indicate greater than moderate limitation. Dr. Olin testified that there is no more than moderate limitation in concentration, persistence, or pace. Dr. Olin noted that the claimant scored 28/30 in the mini mental status exam, which was within normal limits and not indicative of serious impairment of cognitive functions.
>
> . . . .
>
> Dr. Hamrick opined that the claimant would be limited to simple one and two steps operations in a work setting that involved no more than occasional contact with the public, coworkers, and supervisors. **Dr. Hamrick further opined that the claimant should not performed [sic] fast**

- 5 -

to incorporate Dr. Hamrick's pace/production limitations into Plaintiff's RFC. The ALJ also failed to explain why he did not include the doctor's pace/production limitations. After omitting this portion of the doctor's opinion from Plaintiff's RFC assessment, the ALJ also failed to incorporate it into the hypothetical question the ALJ posed to the VE:

> 7. Assume a hypothetical individual who was born on August 19, 1963, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in your response to question #6.[3] Assume further that this individual has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with only occasional contact with the public, co-workers and supervisor; no complex instructions; simple, routine, and repetitive tasks, only occasional changes in work setting; no exposure to chemicals, fumes; no exposure to temperature extremes.

(Tr. 450-451). In response to this hypothetical the VE opined that Plaintiff could not perform past relevant work, but possessed the functional ability to perform the jobs of

---

**paced or high production demand work.** Dr. Hamrick opined that the claimant would deal better with things rather than people. Dr. Hamrick also opined that she should be limited to no more than occasional changes in the workplace.

(Tr. 24-25) (emphasis added).

[3] The VE noted that Plaintiff had work experience as a nurse assistant and porter (Tr. 449).

- 6 -

small parts assembler,[4] inspector and hand packager, [5] and plastic hospital products assembler[6] (Tr. 451).

---

[4] A "small parts assembler" is one who:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

"Dictionary of Occupational Titles" https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT07A.HTM.

[5] A "inspector and hand packager" is one who,

> Inspects molded plastic products, such as bottle caps or tops, for defects, and packs inspected products into shipping cartons: Visually examines molded products for defects, such as scratches, discoloration, and $T3flash,$T1 and discards defective products. Packs inspected product in cartons according to customer specifications, and carries cartons to storage area. ay attach metal bands to bottle tops prior to packing to form necks for bottles and measure necks to ensure specified length, using gauge.

Id.

[6] A "plastic hospital products assembler" is one who,

> Performs any combination of following tasks to assemble and package disposable plastic hospital products, such as hypodermic syringes, catheters, and intravenous apparatus: Reviews work order and selects component parts to assemble specified product. Fits and assembles parts together, using adhesives and handtools, or heats, bonds, and welds parts together, using automatic equipment. Visually inspects products for defects, verifies conformance to specifications, and rejects defective products. Packages assembled product into plastic bag or other container and seals package, using sealing machine. Packs sealed product and instructional information into cartons, and labels cartons with identifying information. May stack cartons in sterilization chamber, seal chamber, and turn valves to admit gas into chamber to sterilize product.

Id.

All of the jobs identified by the VE require the ability to satisfy production demands. See Allison v. Astrue, 425 F. App'x 636, 640 (9th Cir. 2011) (The job of small parts assembler requires a worker to maintain a competitive production pace.); Lorch v. Berryhill, No. 3:16-CV-00076-RJC, 2017 WL 1234203, at *5 (W.D.N.C. Mar. 31, 2017) (finding that the job of inspector and hand packager (D.O.T. 559-687-074) conflicts with a limitation on high production jobs).

The ALJ failed to identify and resolve the conflict between Dr. Hamrick's testimony–which he afforded significant weight–and the Dictionary of Occupational Title's ("DOT") description of the jobs identified by the VE. This is reversible error. In Washington v. Commissioner of Social Security, 906 F.3d 1353, 1355 (11th Cir., Oct. 29, 2018), the Eleventh Circuit held that an ALJ has an affirmative duty to identify conflicts between a vocational expert's testimony and the DOT, ask the vocational expert about them, and explain how the ALJ resolved the conflicts. The ALJ failed to fulfill these duties in this case. See also Lee v. Berryhill, No. 5:17-CV-093-MOC-DCK, , at *5 (W.D.N.C. July 23, 2018), report and recommendation adopted, No. 5:17-CV-93, 2018 WL 4038125 (W.D.N.C. Aug. 23, 2018).

Due to the ALJ's errors there is not substantial evidence to support the Commissioner's final decision. There is also not a sufficient articulation of the ALJ's reasoning to permit informed review by this Court. Consequently, reversal is required. See Knoblock v. Colvin, No. 8:14-CV-00646-MCR, 2015 WL 4751386, at *3 (M.D. Fla. Aug. 11, 2015) ("The ALJ is required to provide a reasoned explanation as to why he chose not to include a particular limitation in his RFC determination.") (citing Kahle v. Comm'r of Soc. Sec., 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012); see also Peavler v. Comm'r of Soc. Sec., No. 616CV736ORL41GJK, 2017 WL 1148942, at *2 (M.D. Fla. Jan.

17, 2017), report and recommendation adopted, No. 616CV736ORL41GJK, 2017 WL 1135169 (M.D. Fla. Mar. 27, 2017) (citing Monte v. Astrue, No. 5:08-CV-101-OC-GRJ, 2009 WL 210720, at *7 (M.D. Fla. Jan. 28, 2009) ("[T]he ALJ committed reversible error [b]y failing to either explain why he adopted only part of Dr. Alvarez-Mullin's opinion after expressly giving it significant weight, or in failing to adequately incorporate all of Plaintiff's mental limitations into his assessment of Plaintiff's RFC.")).

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) The Commissioner's final decision be **REVERSED and REMANDED** for further proceedings consistent with the findings in this report.

(2) The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

(3) Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

(4) Plaintiff be directed that upon receipt of such notice, she shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida on November 21, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record